IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No.: 5:12-CV-456-F

| | |
|---|---|
| DARWIN JOHNSON, LATONJA D. JOHNSON and BRENDA J. MATHIS, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | |
| CITY OF FAYETTEVILLE, HEATHER NICOLE ST. JOHN, SHANE KOEHLER, individually, JENNIFER RODRIGUEZ, individually, PHYLLIS JERNIGAN, individually, CHIEF THOMAS BERGAMINE, in his official capacity as Chief of FCPD and individually, DALE IMAN, in his official capacity as City Manager and individually, ) ) ) ) ) ) ) ) ) ) ) | O R D E R |
| Defendants. ) | |

This matter comes before the court on Plaintiffs' *Motion to Expand the Number of Discovery Requests* [DE-74] and Plaintiffs' *Motion to Modify the Discovery Plan* [DE-78]. Defendants have responded in opposition to Plaintiffs' motions and the matters are ripe for ruling. For the reasons set forth below, Plaintiffs' motions are DENIED.

## I. BACKGROUND

On September 5, 2012, Plaintiffs Darwin Johnson, Latonja Johnson and Brenda Johnson Mathis (altogether "Plaintiffs") filed an amended complaint against Defendants City of Fayetteville ("Fayetteville"), Heather Nicole St. John, Shane Koehler, Jennifer Rodriguez, Phyllis Jernigan, Chief Thomas Bergamine and Dale Iman (altogether "Defendants"). Pls.' First Am. Compl. [DE-30]. Plaintiffs have asserted several individual and official capacity claims against various Defendants

purportedly arising under 42 U.S.C. § 1983 and § 1985, the North Carolina Constitution, state tort law and theories of negligence following an investigation by the Fayetteville Police Department ("FCPD") of a traffic accident on April 7, 2011. *See id.* On October 3, 2012, counsel for all parties (except Defendant Iman who had not yet been served), having conferred pursuant to Fed. R. Civ. P. 26(f), jointly submitted a Discovery Plan. [DE-45].[1] The Discovery Plan provided, among other things, that all fact discovery would be commenced in time to be completed by March 16, 2012. *Id.* at 3.[2] The Discovery Plan also provided a limit on the number of written discovery requests to be propounded by each party. In particular, the Discovery Plan allows for

> [a] Maximum of 25 interrogatories, including subparts, <u>by each party</u>.
> [a] Maximum of 25 requests for admission, including subparts, <u>by each party</u>.
> [a] Maximum of 25 requests for production, including subparts, <u>by each party</u>.

*Id.* at 3 (emphasis added).

On October 17, 2012, this court held a telephonic hearing with counsel regarding the parties' Discovery Plan. [DE-49]. The court entered a Scheduling Order the following day, on October 18, 2012, specifying critical case deadlines. [DE-52]. Per the court's Scheduling Order, all discovery is to be completed no later than March 16, 2013, with an exception for expert depositions to be completed at later dates specified in the court's order. *Id.* at 1. Additionally, the Scheduling Order adopts all other provisions of the parties' Discovery Plan, as agreed to by the parties, not inconsistent with the Scheduling Order, including the limits the parties agreed to place on the number of written discovery. *Id.* at 2. The Scheduling Order provides further that the order shall not be modified

---

[1] A docket entry of October 18, 2012, indicates Plaintiffs' summons was returned as executed upon Defendant Iman on October 4, 2012. [DE-51].

[2] The proposed Discovery Plan contained a typographical error setting March 16, 2012 as the discovery deadline.

2

except by leave of court upon a showing of good cause in accordance with Fed. R. Civ. P. 16. *Id.*

On or about November 29, 2012, Plaintiff Darwin Johnson propounded his first set of written discovery requests to Defendant Fayetteville. Pls.' Mem. [DE-74-1] at 2; Opp'n to Pls.' Mot. to Expand the Number of Discovery Requests ("Defs.' Resp.") [DE-76] at 3; Pl. Darwin Johnson's First Req. For Admissions [DE-77-2]. These discovery requests included interrogatories, document and admission requests. On December 18, 2012, the parties stipulated to a two-week extension of time for Defendant Fayetteville to respond to the discovery requests. Pls.' Mem. [DE-74-1] at 2; Defs.' Resp. [DE-76] at 3; [DE-77-3, 4]. In early January, a dispute arose between the parties, based on the discovery requests propounded by Plaintiff Darwin Johnson, as to the number of written discovery requests permitted under the court's Scheduling Order. [DE-77-5, 6]. In particular, according to Defendants, Plaintiff Darwin Johnson's first set of written discovery requests included 35 requests for admission including subparts, 10 requests beyond the 25 allowed for each party. Pl. Darwin Johnson's First Req. for Admissions [DE-77-2]; Defs.' Resp. [DE-76] at 3; Pls.' Mem. [DE-78-1] at 2. Defendants' counsel proposed two methods of resolving the dispute - either apply the 10 extra requests for admission to another Plaintiff or have Plaintiffs select 10 requests for admission to strike. [DE-77-5]. According to Defendants, Plaintiffs indicated in a response email on January 4, 2013, that Plaintiffs' counsel would select 10 requests for admission to strike. Defs.' Resp. [DE-76] at 4; [DE-77-6]. Thereafter, on January 6, 2013, Plaintiffs propounded written discovery requests to Defendants Jernigan, Koehler, Rodriguez and St. John. Pls.' Mem. [DE-78-1] at 4. However, Plaintiffs' counsel subsequently withdrew all Plaintiffs' written discovery requests to Defendants pending the court's ruling on the instant motions. *Id.*

Plaintiffs' counsel has conferred with Defendants' counsel regarding consent to an increase

3

in the number of written discovery requests and an extension of time in which to conduct discovery, which Defendants have withheld. Pls,' Mem. [DE-74-1] at 2-3; Defs.' Resp. [DE-76]; Pls.' Mem. [DE-78-1] at 4; Def. St. John's Resp. in Opp'n to Pls.' Mot. [DE-79]; Opp'n to Pls.' Mot. to Modify the Discovery Plan [DE-80]. The instant motions followed on January 7, 2013 and January 14, 2013.

## II. DISCUSSION

### A.  Fed. R. Civ. P. 16 Standard for Amending a Scheduling Order.

Plaintiffs' motions seek to enlarge the number of written discovery requests permitted in the Scheduling Order and to extend the time by which to conduct discovery. Because the number of written discovery requests and the deadline by which to conduct discovery were established in the court's Scheduling Order, Plaintiffs' motions seek to amend the Scheduling Order, thereby implicating Fed. R. Civ. P. 16.[3] The Federal Rules of Civil Procedure require the issuance of a scheduling order early in each case. *See* Fed. R. Civ. P. 16(b)(2). "The drafters of the Rules intended [the scheduling] order to control the subsequent course of action so as to improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise and improving, as well as facilitating, the settlement process." *Forstmann v. Culp*, 114 F.R.D. 83, 84-85 (M.D.N.C. 1987); *see also* Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) (explaining that the scheduling order deals with "problem of procrastination and delay by attorneys in . . . discovery").

"[T]he scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Forstmann*, 114 F.R.D. at 85. To the contrary, it

---

[3] Plaintiffs concede that Fed. R. Civ. P. 16 governs this dispute. *See* Pls.' Mot. to Expand the Number of Discovery Requests [DE-74] at 1; Pls.' Mot. to Modify the Discovery Plan [DE-78] at 1.

4

represents "the critical path chosen by the [court] and the parties to fulfill the mandate of Rule 1 in securing the just, speedy, and inexpensive determination of every action." *Marcum v. Zimmer*, 163 F.R.D. 250, 253 (S.D. W. Va. 1995). Accordingly, "[a] scheduling order may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[T]he touchstone of 'good cause' under Rule 16(b) is diligence." *Marcum*, 163 F.R.D. at 255; *see also* Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "'Good cause' is shown when the moving party demonstrates that the scheduling order deadlines cannot be met despite its diligent efforts." *Dent v. Montgomery Cnty. Police Dep't*, 745 F. Supp. 2d 648, 663 (D. Md. 2010); *accord Neighbors Law Firm P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09-CV-352-F, 2011 U.S. Dist. LEXIS 6195, at *4, 2011 WL 238605, at *2 (E.D.N.C. Jan. 24, 2011); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1522.1 (2d. ed. 1987).

## B. Plaintiffs' Motion to Expand the Number of Discovery Requests [DE-74] Fails to Demonstrate Good Cause.

Plaintiffs have moved to modify the Scheduling Order by (1) expanding the number of written discovery requests of each party from 25 to 150 and (2) enlarging the time in which to conduct discovery by 30 days. Pls.' Mot. to Expand the Number of Discovery Requests [DE-74] at 1.[4] In support of their motion, Plaintiffs state that "the complexity of this action has become more apparent to the Plaintiffs as the variety of facts involved in this case are aligned with the different

---

[4] Plaintiffs' brief in support of the motion indicates Plaintiffs seek to propound 125 additional written discovery requests to Defendants Fayetteville, Bergamine, Iman, Koehler, and 25 additional requests to the remaining Defendants. Pls.' Mem. [DE-74-1] at 5-6.

5

legal authorities required to produce sufficient evidence to support claims such as municipal liability, deliberate indifference, and actual and constructive notice." Pls.' Mem. [DE-74-1] at 3. As Plaintiffs' only example of these perceived complexities, however, Plaintiffs state that "to identify a persistent, widespread practices [sic] or custom which Plaintiffs are contending constituted the defendant City's policy, a voluminous number of discovery requests will have to be issued." *Id.* Plaintiffs then describe the threshold of proof necessary to demonstrate supervisory liability in a § 1983 case and the need to discover knowledge held by Defendants. *Id.* Plaintiffs state further that the parties locations have "changed in a manner that has further complicated this case." *Id.* at 3-4. Plaintiffs point out that Plaintiff Darwin Johnson is serving in the armed forces overseas while Defendant Bergamine has retired, Defendant Iman resides in Virginia, and Defendant Koehler is incarcerated in Ohio. *Id.* at 4. Finally, Plaintiffs state that extensive discovery is necessary in order to establish Defendants' knowledge of a widespread pattern of unconstitutional conduct by the FCPD, and that a majority of the necessary evidence is held by defendants. *Id.*

Considering Plaintiffs' motion in the context of Rule 16, Plaintiffs have failed to demonstrate good cause. First, Plaintiffs have failed to identify adequately the complexities experienced or how they have impacted Plaintiffs' diligence to meet deadlines established by the Scheduling Order. Indeed, what has been described by Plaintiffs as the basis for modification to the Scheduling Order is the general nature of a § 1983 action. Plaintiffs offer no basis to conclude they cannot satisfy the case deadlines despite their diligence. The burden alone of having to conduct extensive discovery, as described by Plaintiffs, fails to meet the threshold of good cause. Furthermore, no showing has been made that the nature of this case has changed materially since the entry of the Scheduling Order so as to interfere with Plaintiffs' efforts to meet the deadlines set by the court. While Plaintiffs

6

explain that some of the parties are not located in North Carolina, Plaintiffs fail to articulate how these circumstances have impeded their efforts to satisfy the terms of the Scheduling Order, nor do these developments appear to be recent. Indeed, the court was apprised of Darwin Johnson's deployment during the telephonic discovery conference with the parties in October prior to discovery. There was no indication by Plaintiffs that Darwin Johnson's service was an impediment to meeting the requirements of the Scheduling Order, nor for that matter, was there any confusion expressed to the court as to the terms of the parties' proposed Discovery Plan. Finally, Plaintiffs' argument that the majority of the evidence is held by Defendants is neither unusual, nor does it appear from Plaintiffs' argument to be a development that has occurred since entry of the Scheduling Order. In sum, none of Plaintiffs' purported reasons constitute good cause to modify the Scheduling Order.

C.  **Plaintiffs' Motion to Modify the Discovery Plan [DE-78] Fails to Demonstrate Good Cause.**

Plaintiffs' second motion to modify the Scheduling Order requests that the court clarify "the precise maximum number of Discovery Requests (Interrogatories, Documents, and Admissions) that each plaintiff may individually propound upon each individually named defendants [sic]." Pls.' Mot. to Modify the Discovery Plan [DE-78] at 1. Additionally, Plaintiffs request an enlargement of written discovery to permit 75 discovery requests to be propounded to each individually named defendant and an enlargement of the discovery period from thirty to sixty days. *Id.* at 1-2; Pls.' Mem. [DE-78-1] at 6. In support of Plaintiffs' second motion, Plaintiffs describe the discovery dispute between the parties regarding the terms of the Discovery Plan relating to the number of permissible written discovery requests. Plaintiffs' counsel states that based upon its previous

7

experience, counsel has "always propounded discovery on behalf of each named plaintiff against each named defendant" and has "always proceeded as if each individual Plaintiff could serve each individual defendant a maximum of seventy-five (75) discovery requests". Pls.' Mem. [DE-78-1] at 3-4. Plaintiffs concede, however, that the parties stipulated to a maximum of 25 interrogatories, 25 document requests and 25 requests for admission per party in the Discovery Plan. *Id.* at 4. Plaintiffs' memorandum addresses further the purported need for additional discovery and an extension of the discovery period based on the particular nature of the claims asserted in the complaint.

Properly viewed in the context of Rule 16, Plaintiffs' purported misunderstanding of how discovery would proceed in this case based on its previous litigation experience does not show Plaintiffs' diligence and a misunderstanding is of no merit in the court's good cause determination.[5] Plaintiffs have not shown that the discovery schedule cannot be met despite their diligence. Furthermore, Plaintiffs have failed to articulate any material change in the circumstances of this case that rise to the level of impairing their reasonable diligence to meet the requirements of the Scheduling Order.

Indeed, were the court to allow either of Plaintiffs' motions to modify the Scheduling Order on the grounds asserted, it is foreseeable that such grounds would naturally emerge from a number of contexts as a case develops, thereby providing a basis for the perpetual extension of deadlines contained in the Scheduling Order. Such a prospect is contrary to the established purpose of Rule

---

[5] Plaintiffs' concession that the plain terms of the Discovery Plan provide for 25 interrogatories, requests for production and requests for admission to be served by each party, belies any argument that the Discovery Plan allowed for greater discovery. *See* Pls.' Mem. [DE-78-1] at 4.

16 and the importance of the court's Scheduling Orders.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Expand the Number of Discovery Requests [DE-74] and Plaintiffs' Motion to Modify the Discovery Plan [DE-78] are DENIED.

So ordered, this 27th day of February, 2013.

                                            Robert B. Jones, Jr.
                                            United States Magistrate Judge

9

Case 5:12-cv-00456-F   Document 88   Filed 02/27/13   Page 9 of 9