IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 5:12-CV-00456-F

| | |
|---|---|
| DARWIN JOHNSON, LATONJA D. JOHNSON AND BRENDA JOHNSON MATHIS,<br><br>             Plaintiffs,<br><br>v.   b<br><br>CITY OF FAYETTEVILLE; HEATHER NICOLE ST. JOHN; SHANE KOHELER, INDIVIDUALLY; JENNIFER RODRIGUEZ, INDIVIDUALLY, PHYLLIS JERNIGAN, INDIVIDUALLY; CHIEF THOMAS BERGAMINE, IN HIS OFFICIAL CAPACITY AS CHIEF OF FCPD AND INDIVIDUALLY; AND DALE IMAN, IN HIS OFFICIAL CAPACITY AS CITY MANAGER AND INDIVIDUALLY,<br><br>             Defendants. | PLAINTIFFS' OBJECTION AND APPEAL FROM THE MAGISTRATES JUDGE'S MAY 29, 2013 ORDER ON INFORMAL DISCOVERY CONFERENCE (DE 144) |

   **NOW COME the** Plaintiffs, pursuant to Rule 28 U.S.C. 636(b)(1), L.R. 72.4(a); and Federal Rules of Civil Procedures 72(a) appealing portions of the Magistrate Judge's May 29, 2013 Order (the"Discovery Order") (DE 144). The Discovery Order granted in part, denied in part, several aspects of Plaintiff Darwin Johnson's First Motion to Compel Discovery from Defendant City (DE 84) and Plaintiff Darwin Johnson's Second Motion to Compel Discovery from Defendant Koehler. (DE 112).

### PROCEDURAL BACKGROUND

   The Plaintiffs filed their **First Motion to Compel Discovery** from Defendant City (DE 84) on February 12, 2013. Plaintiffs are appealing the Magistrate Court's decision regarding their discovery requests as follows: Requests for Interrogatories 1, 2, 6, 8, 9, 10, 21; (Exhibit B-2); Document Requests 5, 7, 14, 16, 17, and 19 (Exhibit B-3) and Requests for Admissions 2-10,

& 13 (Exhibits B-4- B-8)[1]. Plaintiff Darwin Johnson's **Second Motion to Compel Discovery** from Defendant Koehler (DE 112) was filed on March 16, 2013. Plaintiffs are appealing the Magistrate Court's decision regarding Document Requests 2, 3, 5, and 7 (Exhibit C-2). On March 28, 2013, this Court granted in part, denied in part, Defendants' Motion to Dismiss. (DE 129 ). On page 29 - 30 of that Order, the Court specified the claims that remained before the Court which included the Monell claims for wide spread customs, policies, and practices, and defective hiring, training and supervision.

The Magistrate Court has subsequently issued this Discovery Order (DE 144) which denied the Plaintiffs access to the Defendant City's Traffic Stop Report Data (TSR). In addition, Plaintiffs have been denied the Biased Based Policing data regarding training, complaints and investigations. Finally, the Plaintiffs have been denied discovery of the internal communications between the Defendant City policymakers and barred some post-incident medical information.

## TRAFFIC STOP DATA

*First Motion to Compel; Document Request No. 19 (Exhibit B-3); Request for Admissions, Request No 2 - 10 & 13 (Exhibit B-4- B-8); Second Motion to Compel. Document, Request Nos. 2 & 3. (Exhibit C-2)*. The Magistrate Court denied the Plaintiffs access to obtain the traffic stop reports (TSR) data maintained by Defendant City which substantiated the widespread pattern of constitutional violations against African Americans. By race, sex, and ethnicity, NCGS 114-10.01 requires collection of the number of stops, arrests, searches, and use of force incidents to review potential instances of racial profiling or biased-based policing. (Exhibit D-1, pg 43).

---

[1] Admissions Requests Nos. 1- 11 were listed as responding to Darwin Johnson and Admissions Requests Nos. 12 - 16 were listed with Plaintiff Latonja Johnson.

This TSR data is not limited to only traffic stops. The number of arrests, searches and use of force incidents during traffic investigations are also recorded by race, sex and ethnicity. (Exhibit D-2-D-3, pg 81-98). Collectively, the disproportionate number of African Americans stops, searches, arrests, and use of force incidents constituted a custom and practice of racial profiling by the FCPD that was so "persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Monell v. Dept. of Soc. Serv. of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). For example, Plaintiffs sought Defendant Koehler's traffic reports (Second Motion to Compel, Document Request No. 2 and his traffic stop data from the Record Management System (RMS) (Document Request No. 3) (Exhibit C-2) in order to detect a pattern of racial profiling such as the number of traffic investigations that escalated into arrests, searches, and use of force incidents. Defendant City listed seven incidents in 2010 where Defendant Koehler's traffic investigation escalated into use of force incidents. (Exhibit C-3). The data from these two discovery requests are relevant to both knowledge and indifference by offering details of each traffic stop/investigations[2] by Defendant Koehler that escalated in this manner.

There is no logical distinction between racial profiling when a citizen calls for police assistance as oppose to a police officer initiating a traffic stop and/or investigations. To compartmentalize racial profiling in this manner is to trivialize the severity of the constitutional violations that African Americans were enduring from Biased Based Policing practices. What is relevant is the racial animus by FCPD officers. The racial bias that is suggested through the disproportionate number of African Americans being stopped according to the TSR data is

---

[2]NOBLE reported that an officer stated that "A lot of times we do traffic enforcement to get other crimes." (Exhibit D-1, pg 43).

equally relevant to other aspects of police interactions such as the high disproportionate number of arrests, searches, and use of force incidents involving African Americans.

This undisputed evidence that members of the FCPD disproportionally stopped African Americans more than other citizen goes to the heart of Plaintiffs' claims that the Defendants were implementing a widespread unconstitutional policy of racial profiling that violated the constitutional rights of African Americans. (DE 30 at 20-23 & 28). These unconstitutional stops by the FCPD are directly linked to the behavior through racial profiling that disproportionally resulted in illegal searches, arrests, and excessive (use of) force incidents against African Americans.

The Plaintiffs are contending that the number of traffic stops is one element of the aggressive law enforcement presence utilized by the FCPD as part of a widespread customs and practice of racial profiling that violated the constitutional rights of African Americans. (DE 30 at 20-23 & 28). The Plaintiffs should be entitled to obtain evidence of a "series of bad acts [] inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate [employees]." *Woodward v. Correctional Med. Serv*., 368 F.3d 917, 927 (7th Cir. 2004).

The implementation of these aggressive tactics by the FCPD has evolved into a widespread pattern of lawless behavior by certain officers singling out African Americans disproportionally for stops, arrests, searches, and use of force incidents in police actions clearly beyond "routine and ordinary traffic investigation." (DE 144 at 12). Even if the number of traffic stops was excluded, this traffic stop data itself would still remains relevant because this

4

data is reasonably calculated to lead to admissible evidence such as the statistics on the disproportionate number of arrests, searches and incidents of use of force of African Americans.

***Request for Admissions, Request Nos. 2 - 10 & 13. (Exhibit B-4).*** The Plaintiffs requested admissions from the Defendants that written correspondence between the NAACP and other civil leaders who corresponded with the Defendant City about racial profiling prior to the April 17, 2011 arrest of Plaintiff Johnson were authenticate. For example, Defendant Iman invited the United States Department of Justice (DOJ) to review the FCPD traffic stop data. In his December 7, 2010 letter to DOJ, Iman wrote:

> Specifically we request an evaluation of our Police Department's patterns and practices as they relate to traffic stops and ***alleged racially biased policing***. (Exhibit B-5, Exhibit A to Request for Admissions)

Note that Defendant Iman requested a review of not just the TSR data, but the racially biased policing allegations as well. In January 2012, DOJ responded that the data raised concerns relating to a possible pattern or practice of biased policing. DOJ also stated that the Traffic Stop Report data that they reviewed provided reason to suspect that FPCD's practices "risk running afoul of the 14th Amendment's protection against discriminatory policing." (DE 30 at 14). (Exhibit B-8, Exhibit K to Request for Admissions)

Furthermore, the National Organization of Black Law Enforcement Executives (NOBLE) conducted a study of the City's biased based policing policies. (Exhibit D-1 - D-3). In their report, NOBLE confirmed the existence of racial profiling:

> Limited to discretionary traffic stops, the raw data supports at least some of the negative concerns expressed by the community regarding racial disparity in traffic stops and consensual searches. (Exhibit D-1, pg 45)

> African Americans are stopped disproportionally and are subjected to consent searches disproportionally. (Exhibit D-1, pg 46)

Notwithstanding these findings, the Magistrate Court sustained Defendants' objections and struck Plaintiffs' Requests for Admissions 2-10 & 13 (Exhibit B-4 - B-8) finding these documents were not relevant and were not reasonably calculated to lead to admissible evidence. (DE 144 at 12). To the contrary, the relevance of these documents substantiate both the knowledge and indifference of the policymakers prior to the April 17, 2011 incident.

## BIASED BASED POLICING DATA

*First Motion to Compel; Request for Interrogatories, 9 & 10, (Exhibit B-2); Document Request No. 5, 7, 14, 16, 17 (Exhibit B-3); Admissions Request No 2 - 10 & 13 (Exhibit B-4-B-8); Second Motion to Compel. Document Request Nos. 5 & 7 (Exhibit C-2).* Bias based policing and racial harassment is the central theme in the First Amended Complaint regarding how these traffic investigations were conducted by the FCPD. The Magistrate Court erred in limiting the Plaintiffs' discovery requests to "unlawful search, unlawful seizure, excessive force, false arrest/ imprisonment, and or conspiracy to violate civil rights..." conducted during only "routine and ordinary traffic investigations." (DE 144 at 11).

The First Amended Complaint alleged that Defendant St. John falsely reported to the FCPD that her car was surrounded by a group of angry African Americans.(DE 30 at 8) and the evidence elicited through discovery now show that Defendant Koehler was responding to the scene as a disturbance call (Exhibit J at 139), and not simply a "routine and ordinary traffic investigation" as originally alleged. Although the disturbance call Defendant Koehler responded to was interlaced with a traffic investigation, the Magistrate also erred in ruling the Biased Based Policing data was overly broad and not relevant. (DE 144 at 21). This limitation failed to appreciate the scope and magnitude of the false accusations by Defendant St. John. The categories of racial profiling/biased based policing and racial harassment regarding

6

investigations, complaints and/or training of FCPD members should have been incorporated into each of these discovery requests and should not have been limited to "routine and ordinary traffic investigations."

As an example, Request for Production No. 16 requested "all summaries of Biased Based Complaints prepared since 2004." (Exhibit C-2). While the Magistrate Court ruled that this discovery request was "overly broad...." (DE 144 at 21) in the 2011 Annual Report by the Office of Professional Standards, FCPD reported that there were significant increases in the number of use of force, Biased Based Policing and Unprofessional Conduct investigations and complaints against FCPD officers. (Exhibit E). According to this report, the number of use of force complaints rose from 91 in 2009 to 145 in 2011. It was also reported that the majority of the use of force incidents involved African American men. In addition, it was reported that the number *of Biased Based Policing Complaints* increased from 7 in 2009 to 21 in 2011 and none of these cases were sustained. (Exhibit E at 8) The Magistrate Court ruling precludes Plaintiffs' access to these Biased Based Policing investigations and complaints that were cited in the OPS report.

The Plaintiffs narrowly tailored each of these requests to include Biased Based Policing as a category for investigations, complaints and/or training of FCPD members. Elizabeth Johnson testified in her deposition that she perceived race was a factor in how Defendant Koehler treated the Plaintiffs differently than he did Defendant St. John. (Exhibit I at 149-150). The Plaintiffs are concern that a relevant category of complaints will be precluded on the basis of semantics.[3] For example, Plaintiff's Second Motion to Compel, Request No. 5 seeks all

---

[3]The Magistrate Court appeared to not appreciate that FCPD maintained a specific category of Biased Based Policing complaints, investigation and training.

complaints and Document Requests No. 7 seeks investigative files against Defendant Koehler. In striking all references to Bias Based Policing from these requests, the Magistrate Court restricted the Plaintiffs' access to vital racial profiling information as to Defendant Koehler conduct and to prove both the knowledge and racial animus of the customs and policies of the Defendant City.

According to data from the website from the North Carolina Department of Justice, twenty FCPD officers accounted for the issuance of approximately 32% of all traffic citations written by the FCPD in 2010 and 2011. The Defendant City's anti-racial profiling policy (See General Order 1.8, entitled *Preventing Biased Policing and the Perceptions of Biased Policing*; (Exhibit H) required supervisors to conduct annual reviews of the performance of its officers in order to detect patterns of bias. The relevant inquiry, through Interrogatories 9 and 10, was whether the conduct of these officers represented an unconstitutional pattern or practice of racial profiling and harassment. Potential evidence that the Defendant City was negligent in its failure to detect racial profiling by its patrol officers is extremely relevant to the allegations that the FCPD has maintained a "widespread custom or policy of harassing African American citizens by use of unreasonable searches and seizures and excessive force." (DE 30 at 14).

"Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Biased Based Policing data is relevant to this case because Plaintiffs' use of force complaint is one of these Biased Based and use of force complaints cited in the OPS report.

## POLICYMAKERS' INTERNAL COMMUNICATIONS

*First Motion to Compel, Document Requests Nos. 6 & 21* (**Exhibit B-3**)**.** Months before

the April 17, 2011 arrest of Plaintiff Johnson, civic leaders were raising concerns to city policy makers about the racial profiling and abuses by the FCPD. (Exhibit G).  The Plaintiffs have conceded that the original scope of  Requests for Document Nos 6 and 21 (Exhibit B-3) was overly broad and therefore Plaintiffs were seeking only the communications between the policy makers immediately prior to and during the period of time when the issues concerning biased based policing were being publically debated.

An examination of the internal communications between city officials and final policy makers is essential to Plaintiffs' duty to show that these customs and practices were the moving force causing the injuries to the Plaintiffs and that these officials had actual or constructive knowledge and indifference that these tactics were wilfully violating the constitutional rights of African Americans.  Each of these requests related to internal communications between the City Manager, Chief of Police and the City Council (all policy makers) members is reasonably calculated to lead to the discovery of relevant admissible evidence.

***Second  Motion to Compel, Document Requests No. 13 (Exhibit C-2).***   The Magistrate Court precluded "(D)ocuments corresponding to a period of time *after April 17, 2011..."* as being "... beyond the scope of reasonable calculated discovery."  (DE 144 at 26).  The Plaintiffs are seeking the medical records ***after*** *the April 17, 2011* date to show post-incident patterns of conduct by the Defendant City relevant to both their knowledge, indifference and whether the supervisors concealed his condition.  Defendant Koehler's testimony in his deposition stated that he received  30% disability for his PTSD condition from the Veterans Administration without a medical diagnosis from a medical professional has placed the veracity of both his statements and his condition at issue. (Exhibit K at 181-184).

Defendant Koehler  admitted to Plaintiff Darwin Johnson on April 17, 2011 that he had

9

been diagnosed with PTSD (DE 30 at 12), and that he informed his supervisors in April 2011. (Exhibit J at 177 -178). Furthermore, Defendant Koehler's behavior resulted in a fitness for duty exam in which neither he nor his supervisors disclosed his PTSD condition to the mental health profession. Plaintiffs are contending the Defendant City knew or should have known before April 17, 2011 of his condition by his irrational behavior (Exhibit C-3) and being permitted to conduct post-incident discovery could reasonably lead to admissible evidence regarding deficiencies in Defendant Koehler's supervision and retention. All of these facts coupled, with the veracity of *when and what* the supervisors knew of Defendant Koehler's condition, have opened the door for the Plaintiffs to explore his post incident medical/mental history in order to ascertain whether he or his supervisors concealed his condition or were otherwise not truthful.

## **CONCLUSION**

Plaintiffs would respectfully request that this Court expand the discovery requests to include the traffic stop report data and biased based policing data. Plaintiff would also request access to the communication between the policymakers from November 1, 2010 through September 1, 2011 and the medical information after April 17, 2011.

This the 11th day of June 2013.

                                      /S/ James H. Locus, Jr.
                                James H. Locus, Jr.
                                Attorney for the Plaintiffs
                                P.O. Box 331
                                Fayetteville, NC 28302
                                (910) 630-1491 Fax: (910) 822-0389
                                Locuslaw@aol.com
                                BAR # 13853

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing Plaintiffs' OBJECTION AND APPEAL OF MAGISTRATES JUDGE'S MAY 29, 2013 ORDER ON INFORMAL DISCOVERY CONFERENCE with the Clerk of Court using the CM/ECF system and served the same on all parties by electronic mail and/or by deposing a copy thereof in the United States mail, postage prepaid, addressed as follows:

        The Honorable Robert B. Jones
        United States Magistrate Judge
        United States Courthouse
        2 Princess Street
        Wilmington, NC 28401

        Mr. Christopher M. Thomas
        James Thornton
        Parker, Poe, Adams & Bernstein, LLP
        150 Fayetteville Street, Suite 1400
        P.O. Box 389
        Raleigh, NC 27602-0389
        jamesthornton@parkerpoe.com
        christhomas@parkerpoe.com
        Attorney for Defendants City of Fayetteville
        Shane Koehler, Jennifer Rodriguez, Phyllis Jernigan,
        Thomas Bergamine, Dale Iman

        Mr. David L. Levy
        Hedrick, Gardner, Kincheloe & Garofalo, LLP
        P.O. Box 30397
        Charlotte, NC 28230
        Phone: (704) 366-1101
        Fax:;   (704) 366-6181
        Email:  dlevy@hedrickgardner.com
        *Attorney for Defendant Heather Nicole St. John*

RESPECTFULLY SUBMITTED, this  11TH  day of June, 2013.
          /s/ James H. Locus, Jr.
        James H. Locus, Jr.
        P.O. Box 331
        Fayetteville, NC 28301
        Locuslaw@aol.com
        (910) 630-1491
        Attorney for the Plaintiffs