UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-456-F

| | |
|---|---|
| DARWIN JOHNSON, et al., ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CITY OF FAYETTEVILLE, et al., ) | |
| Defendants. ) | |

This matter is before the court on the Plaintiffs' Appeal [DE-147] of the May 29, 2013, Order [DE-144] issued by Magistrate Judge Robert B. Jones, Jr., which allowed in part and denied in part Plaintiff Darwin Johnson's Motion to Compel Discovery [DE-84] and Second Motion to Compel [DE-112]. Defendants have filed a response [DE-149] thereto. Also before the court is the Plaintiff's Amended Motion to Seal Exhibit C-3 [DE-148]. For the reasons stated herein, the Motion to Seal is DENIED without prejudice, and the May 29, 2013, Order is AFFIRMED in part and REVERSED in part.

## I. PROCEDURAL HISTORY

On June 7, 2012, Plaintiffs Darwin Johnson, LaTonja Johnson, and Brenda Johnson Mathis initiated this action by filing a Complaint in the General Court of Justice, Superior Court Division, Cumberland County, State of North Carolina. The action was removed to this court on July 20, 2012, and on September 5, 2012, Plaintiffs filed the Amended Complaint [DE-30], containing several causes of action arising under 42 U.S.C. § 1983 and § 1985, the North Carolina Constitution and state tort law against various defendants. Thereafter, Defendant Heather Nicole St. John filed a motion to dismiss on September 19, 2012 [DE-35] and Defendants City of Fayetteville, Officer Shane Koehler, Detective Jennifer Rodriguez, Sergeant Phyllis Jernigan, Chief Thomas Bergamine,

and Dale Iman (collectively, "City Defendants") filed a separate motion to dismiss [DE-59] on October 24, 2012. In a March 28, 2013, Order [DE-129], the undersigned ruled on the pending motions to dismiss, resulting in the following claims remaining in this action:

1. **Defendant St. John**: Plaintiff Darwin Johnson § 1985 claim for civil conspiracy. Plaintiff Mathis' § 1985 claim for civil conspiracy. Plaintiff LaTonja Johnson's claim for negligence.

2. **Defendant Koehler in his Individual Capacity**: Plaintiff Darwin Johnson's (1) § 1983 claims for false arrest (unreasonable seizure), excessive force, and malicious prosecution; (2) § 1985 claim for civil conspiracy; and (3) state law claims of IIED, assault and battery, and false imprisonment. Plaintiff Mathis' (1) § 1983 claim of excessive force; (2) § 1985 claim for civil conspiracy; and (3) state law claim for assault and battery.

3. **Defendant Rodriguez in her Individual Capacity**: Plaintiff Darwin Johnson's § 1985 claim for civil conspiracy. Plaintiff Mathis' § 1985 claim for civil conspiracy.

4. **Defendant City of Fayetteville**: Plaintiffs Darwin Johnson and Mathis' state law claim of negligent hiring, retention, supervision, training, and discipline.

5. **Defendant City of Fayetteville, and Defendants Bergamine and Iman in their Individual Capacity**: Plaintiffs Darwin Johnson and Mathis' municipal and supervisor derivative § 1983 and § 1985 claims based on these remaining predicate claims asserted against Defendant Koehler due to their negligent hiring of and failure to train Defendant Koehler, as well as Plaintiffs Darwin Johnson and Mathis' municipal and supervisor derivative § 1983 and § 1985 claims based on these remaining predicate claims asserted against Defendants Koehler and Rodriguez due to the institution and maintenance of a widespread discriminatory policy.

March 28, 2013 Order [DE-129] p. 37.

While the motions to dismiss were pending, Plaintiff Darwin Johnson served Defendant City of Fayetteville with his written discovery requests, and he served his First Request for Production of Documents upon Defendant Koehler. Both the City and Koehler asserted objections to Plaintiff Darwin Johnson's requests. Thereafter, Plaintiff Darwin Johnson filed two motions to compel [DE-84; DE-112].

The magistrate judge conducted a status conference with all parties on May 17, 2013,

addressing the motions to compel as well as other pending discovery motions.[1] Subsequently, he issued an Order [DE-144] allowing in part, and denying in part, the motions to compel. Pertinent to this appeal, the magistrate judge made the following rulings with regard to the motion to compel.

First, in an attempt to provide a general framework for discovery given the nature of the Plaintiffs' remaining claims in this suit, he restated the confines of Plaintiff's Interrogatory No. 1 as follows:

> Identify and describe every formal written complaint of unlawful search, unlawful seizure, excessive force, false arrest/imprisonment, and/or conspiracy to violate civil rights, made against any Fayetteville City Police Officer for any incident or incidents occurring in connection with an ordinary and routine traffic investigation between April 17, 2007 and April 17, 2011.

May 29, 2013 Order [DE-144] p. 11. The magistrate judge, in a footnote, noted that his use of the word "traffic investigation" was

> intentional and connotes a specific meaning within this case for the purposes of discovery. The facts of this case, as alleged by Plaintiffs, involve a traffic investigation and not a stop. A traffic investigation is limited to situations whereby a police officer is called and responds to a traffic incident that has already occurred–the very circumstances alleged in this case. A traffic stop is where a police officer initiates his own involvement rather [than] responds to an existing situation. Therefore, the term "traffic investigation" is used to the exclusion of "traffic stop."

*Id.* p. 10 n.4. Based on this framework, the magistrate judge sustained numerous objections to discovery requests, reasoning that the allegations in the Amended Complaint do not concern traffic stops by the Fayetteville City Police Department, and therefore discovery regarding the traffic stops is not likely to lead to the discovery of admissible as to a claim.

Second, the magistrate judge sustained the City's objections to Plaintiff Darwin Johnson's Interrogatory Nos. 9 and 10, which sought the identity of and information regarding Fayetteville

---

[1] In ruling on Plaintiffs' Objection and Appeal, the court has listened to the court-maintained recording of this status conference.

3

City Police Officers who have issued a large percentage of traffic citations between 2007-2012 and information on whether the officers were reviewed for "biased-based" practices. The magistrate judge again explained that the alleged predicate acts underlying the derivative claim–false arrest, excessive force, malicious prosecution and civil conspiracy–do not contemplate "traffic citations." He also sustained the City's objection to Request for Production No. 16, which sought "all Summary of Biased Based Complaints prepared since 2004 by any entity of the City of Fayetteville," reasoning that the request was overly broad because it sought the discovery of complaints of bias of all sorts and against individuals other than police officers, and that it was cumulative, because documents relating to the predicate acts would already be produced.

Third, the magistrate judge sustained the City's objections to requests for production seeking certain internal communications sent by or to any agent or employee of the City, on the basis that the request was overly broad and burdensome. Finally, the magistrate judge sustained, in part, Defendant Koehler's objection to Plaintiff Darwin Johnson's Request for Production No. 13, which sought pyschological evaluations of Defendant Koehler. The magistrate judge directed Koehler to produce responsive documents corresponding to the time period on or before April 17, 2011, but ruled that Koehler did not have to produce documents corresponding to a period of time after that date.

Plaintiffs timely filed their Objection and Appeal from the Magistrate Judge's May 29, 2013 Order. Defendants City of Fayetteville, Shane Koehler, Jennifer Rodriguez, Phyllis Jernigan, Dale Iman and Thomas Bergamine have filed their response, and the matter is now ripe for ruling.

## II. APPEAL OF MAGISTRATE JUDGE'S ORDER

### A. Standard of Review

Title 28 U.S.C. § 636, Rule 72 of the Federal Rules of Civil Procedure, and this court's local

rules, authorize magistrate judges to decide certain non-dispositive pretrial matters. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(a); Local Civil Rule 72.3(b), EDNC. Upon timely appeal by an objecting party, a district judge must "modify or set aside any part of the of the order that is clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "A factual finding is clearly erroneous when [a court is] 'left with the definite and firm conviction that a mistake has been committed.'" *TFWS, Inc. v. Franchot,* 572, F.3d 186, 196 (4th Cir. 2009) (quoting *Anderson v. Bessemer City,* 470 U.S. 564 (1985)). Although the "contrary to law" standard permits plenary review of legal conclusions, *see PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010), decisions related to discovery disputes and scheduling are accorded greater deference. *See, e.g., In re Outsidewall Tire Lit.,* 267 F.R.D. 466, 470 (E.D. Va. 2010).

With regard to the discovery issues at dispute in this appeal, the Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. *See generally*, FED. R. CIV. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando,* 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672798, at *4 (E.D.N.C. Sept. 27, 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007

WL 1726560, at *3 (M.D.N.C. June 13, 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). The party resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 242 (E.D.N.C. 2010).

## B. Traffic Stop Data Discovery Requests

Plaintiff first contests several of the magistrate judge's rulings precluding them from obtaining the Traffic Stop Reports ("TSR") data maintained by the City. Plaintiffs contend that the gravamen of their municipal liability claims is that Defendants implemented a widespread policy of racial profiling, and that use of aggressive tactics during traffic stops and investigations is one manifestation of that policy. Appeal [DE-147] pp. 2-4. *See also* Amended Compl. [DE-30] ¶ 1 (alleging that the defendant officer's actions were "in accordance with the pattern, practice, and policy and/or custom of [the City of Fayetteville] regarding how African American citizens are treated during traffic stops and investigations"); ¶ 65 (alleging that citizens and community leaders warned various City Defendants "that the manner in which the Defendant FCPD was conducting traffic investigations by institution harassing and discriminating tactics against African American citizens" was unlawful); ¶ 66 (alleging "the Defendant City of Fayetteville was the final policy maker on law enforcement issues concerning traffic stops); ¶ 68 (alleging the City Defendants identified "hot spots" for aggressive law enforcement presence). Plaintiffs assert that the information included in the TSR data–including the number of drivers stopped, their race and ethnicity, whether a search was performed during the stop, and whether force was used during the stop–all is relevant to this theory of their claim, or will at least lead to admissible evidence. The court agrees.

The court recognizes that the magistrate judge's focus and differentiation between the terms

6

"traffic stop" and "traffic investigation" may be due to the court's language on pages 29 and 30 of the March 28, 2013 Order [DE-129]. Specifically, in denying the City Defendants' motion to dismiss as to Plaintiffs' § 1983 *Monell* claim, the court noted that Plaintiffs' various allegations, including their allegation "that use of excessive force and unreasonable searches and seizures on African Americans during ordinary and routine traffic investigations are pursuant to a policy, custom, and practice to do so" were sufficient to state a claim. March 28, 2013 Order [DE-129] pp. 29-30. In so doing, the court did not intend to impart special significance to the words "traffic investigation" and did not intend, by use of the phrase, to imply the exclusion of evidence of "traffic stops." Indeed, the court notes that Plaintiffs appear to use "traffic stops" and "traffic investigations" interchangeably throughout the Amended Complaint. Moreover, in allowing Plaintiffs' claim to go forward, the court specifically referenced the section of the Amended Complaint where Plaintiffs' allegations indicate that the term "traffic investigations" encompass "traffic stops." *See* March 28, 2013 Order [DE-129] p. 29 ("Considering this section [pages 19-20 of the Amended Complaint] in conjunction with" Plaintiffs' other allegations, "the court finds that Plaintiffs adequately allege derivative liability for a widespread discriminatory policy."); Amended Compl. [DE-30] pp. 19-20 (alleging, among other things, that "for the years from 2007-2011, the numbers reported to the State of North Carolina by the FCPD show that African Americans are stopped for traffic investigations disproportionally to other categories of citizens"). Accordingly, although the court will not make any ruling, at this time, with regard to the ultimate admissibility of evidence relating to "traffic stops," the court nevertheless concludes that the data about traffic stops may lead to the discovery of admissible evidence which would support Plaintiffs' § 1983 *Monell* claim.

With this in mind, the court will turn to Plaintiffs' specific discovery requests regarding the TSR data.

*1. Request for Production No. 19*

In Request for Production No. 19, Plaintiff Darwin Johnson seeks "[f]or each calendar year beginning 2004 to present, provide all Traffic Stop Reports (TSR) whether in document or electronic form." For the reasons stated above, the court finds that this request is reasonably calculated to lead to admissible evidence.

The City, however, has submitted the declaration of the Lieutenant in charge of the Central Records Unit for the Fayetteville Police Department, stating that once TSRs are scanned and submitted to the State Bureau of Investigation ("SBI"), the actual report is destroyed, and that the department has only begun maintaining copies of the TSRs since August 16, 2009. Decl. of Sherry Sparks ¶ 7 [DE-93]. Accordingly, Defendant City of Fayetteville is directed to respond to this interrogatory with the TSRs maintained since August 16, 2009.

*2. Request for Admissions Nos 2-10 and 13*

The magistrate judge sustained the City's objections to Plaintiffs' Requests for Admissions Nos. 2-10 and 13 on the basis that they relate to data concerning traffic stops, and are therefore overly broad and not reasonably calculated to lead to the discovery of admissible evidence. As this court already has explained, it does not find requests for discovery related to traffic stops to be overly broad or irrelevant. Accordingly, Defendant City of Fayetteville is directed to respond to Plaintiff LaTonja Johnson's Request for Admission No. 13.

*3. Request for Production No. 2*

Plaintiff Darwin Johnson seeks the TSRs for each calendar year Defendant Koehler was employed. The court deems this to be cumulative to Request for Production No. 19 directed to Defendant City of Fayetteville, and for that reason, the court declines to overrule the magistrate judge's decision as to this request.

8

### 4. Request for Production No. 3

Plaintiff Darwin requests, for each calendar year in which Defendant Koehler was employed with the City, the data within the Record Management System ("RMS") that identifies traffic stops made by Defendant Koehler. The magistrate judge sustained Defendant Koehler's objection to this request, on the basis that data regarding traffic stops is not relevant. As previously discussed, this conclusion is incorrect.

Defendant Koehler has indicated, however, via the declaration of the Lieutenant in charge of the Central Records Unit for the Fayetteville Police Department, that the data within the RMS "is in a format that can only be read using the RMS system itself." Decl. of Sherry Sparks ¶ 6 [DE-93]. It is unclear to the court, in light of Lieutenant Sparks' declaration, whether this information is capable of being produced in response to the request for production. The parties are DIRECTED to confer to discuss how the data requested by Request for Production No. 3 may be produced. If the parties cannot reach an agreement, the parties are free to file either a motion to compel or a motion for a protective order. Any such motion must describe, in detail, the options the parties have explored for compiling and producing the requested data.

### C. Biased-based Policing Discovery Requests

Plaintiffs also object to several of the magistrate judge's rulings with regard to discovery concerning "biased-based policing." As discussed at the hearing before the magistrate judge, the City of Fayetteville Police Department has promulgated General Order 1.8, regarding "Preventing Biased Policing and the Perceptions of Biased Policing." Appeal, Ex. H [DE-147-19]. The General Order defines "Biased Based Profiling" as "the selection of individuals for <u>investigative, detention or arrest purposes</u> based solely on a trait common to a group. This includes, but is not limited to, race, ethnic background, gender, sexual orientation, economic status, age, culture, or any other

9

identifiable group." *Id.* (emphasis in original). Plaintiffs contend that by sustaining Defendants' objections to various discovery requests seeking information on biased-based policing, they have been precluded from obtaining relevant discovery. The court agrees.

Again, in support of the § 1983 *Monell* claim, Plaintiffs allege that Defendants City of Fayetteville, Bergamine, and Iman instituted "a widespread law enforcement policy and practice that involved the identification of certain geographic locations within the Fayetteville community wherein the [FCPD] instituted an aggressive law enforcement presence," and that they did so "with full knowledge of the widespread abuse that was being inflicted upon African American citizens . . . ." Amended Compl. [DE-30] ¶¶ 105-109. Plaintiffs further allege that these Defendants were aware that officers had been "conducting biased based policing against African Americans." *Id.* ¶ 110. In light of these allegations, some discovery regarding biased-based policing is relevant. The court will address each of the contested discovery requests in turn.

*1. Interrogatory Nos. 9 and 10*

In these interrogatories, Plaintiffs seek the identity of and information regarding Fayetteville City Police Officers who issued a large percentage of traffic citations between 2007-2012 and whether these officers were subjected to any type of supervisory review for any possible biased-based practices. The magistrate judge sustained the City's objections to this interrogatory on the basis that the requests were overly broad because "[n]one of the predicate acts concerns the issuance of traffic citations nor do any of the alleged acts contemplate traffic citations." May 29, 2013, Order [DE-144] p. 14. Plaintiffs argue that this information can show whether the conduct of these officers represented an unconstitutional pattern of racial profiling, or biased-based policing, and whether the City was negligent in failing to detect biased-based policing by its patrol officers.

The court agrees that these interrogatories are reasonably calculated to lead to the discovery

10

of admissible evidence. The court is cognizant that Lieutenant Sparks has stated that it would take one employee 45 days to compile the requested information. Lieutenant Sparks did not, however, specify how she reached this estimate, and the court is not convinced that the request is overly burdensome. Accordingly, Defendant City of Fayetteville is directed to respond to these interrogatories.

*2. Request for Production No. 5*

Plaintiffs seek documents dated January 1, 2004, to the present pertaining to complaints by citizens to the City or the Police Department regarding "false statements, unlawful seizure, unlawful entry, excessive force, deprivation of a liberty interest without due process, racial harassment, biased-based policing, invasion of bodily integrity, false arrest/imprisonment, consent search, and/or conspiracy to violate civil rights." The magistrate judge limited this request to prior written complaints regarding false arrest, unlawful search and seizure, malicious prosecution, excessive force, and conspiracy in connection with traffic investigations for a period of four years predating the incident alleged in the Amended Complaint. *See* May 29, 2013 Order [DE-144] p. 16. The court agrees with Plaintiffs that this request also should include any prior written complaints concerning biased-based policing. Accordingly, the City of Fayetteville is directed to produce written complaints made to Defendant City of Fayetteville and the Fayetteville City Police Department regarding biased-based policing for the period of four years predating the incident alleged in the Amended Complaint.

*3. Request for Production No. 14*

Plaintiffs also seek all documents since January 1, 2007, contained in the personnel files of each Fayetteville City Police Officer subjected to a complaint and/or investigation involving "excessive force, biased based policing, racial harassment, illegal (consent) search, false arrest

11

and/or illegal search." The magistrate judge limited this request to "documents for those police officers against whom a complaint was made or who were investigated regarding claims for false arrest, excessive force, malicious prosecution or civil conspiracy." May 29, 2013 Order [DE-144] p. 21. The court agrees with Plaintiffs that this request also should include complaints about biased-based policing. Accordingly, Defendant City of Fayetteville is directed to produce responsive documents for those police officers against whom a complaint was made or who were investigated for biased-based policing.

*4. Request for Production No. 16*

Plaintiffs seek "all Summary [sic] of Biased Based Complaints prepared since 2004 by any entity of the City of Fayetteville [including] the Fayetteville City Police Department." The magistrate judge sustained Defendant City of Fayetteville's objections to this request, finding the request was overly broad and cumulative of other requests. Although the court does not find the request to be overly broad–at least to the extent that it seeks documents related to complaints and investigations of biased-based policing since 2007–it is cumulative of Plaintiffs' other requests. Accordingly, the court declines to overrule the magistrate judge's decision as to this request.

*6. Request for Admissions Nos. 2-10 and 13*

The court already has directed Defendant City of Fayetteville to respond to these requests.

### D. Internal Communications discovery requests

Plaintiffs also appeal the magistrate judge's ruling sustaining the Defendant City of Fayetteville's objections to Plaintiff Darwin Johnson's Request for Production of Documents Nos. 6 and 21, which seek (1) correspondence from January 1, 2004, to the present, sent by or to various agents or employees of the City of Fayetteville, primarily the Mayor, City Council members, and members of the Fayetteville City Police Department, referring to any "administrative matter"

12

concerning the Fayetteville City Police Department and (2) "each and every correspondence" sent by or to any agent or employee of Defendant City of Fayetteville (including the Mayor, members of the City Council and the Fayetteville City Police Department) from January 1, 2009, that refers to any police practice, policy, or activity.

In sustaining the objections to these requests, the magistrate judge specifically reasoned:

> The request is overly broad and Defendant City of Fayetteville has demonstrated the burdensome nature of the request given the large number of individuals whose emails must be searched and the small likelihood that any relevant discovery would be produced, given the City Council and Mayor's detachment from policy issues in connection with the Fayetteville City Police Department in regards to the predicate acts involved. Even limiting the scope of the request to the time period and predicate acts previously enumerated would neither alleviate the burden upon Defendant City of Fayetteville or increase the likelihood of discovering relevant information.

May 29, 2013, Order [DE-144] p. 17 (sustaining the objection to Request No. 6); *see also id.* pp. 22-23 (sustaining the objection to Request No. 21 "for the reasons stated by the court in Request for Production No. 6"). Plaintiffs argue now–as they did in the hearing before the magistrate judge–that although the requests, as originally worded, were overly broad, they should still be entitled to the communications between policymakers immediately prior to and during the period of time when the issues concerning biased-based policing were being publically debated.

In this instance, the court cannot conclude that the magistrate judge's assessment as to the burdensome nature of this request is either clearly erroneous or contrary to law. Accordingly, the court affirms the portion of the May 29, 2013 Order [DE-144] sustaining Defendant City of Fayetteville's objections to Request for Production of Documents Nos. 6 and 21.

### E. Koehler's post-April 17, 2011, psychological evaluations

Finally, Plaintiffs contend that the magistrate judge erred in ruling that Defendant Koehler did not have to produce any psychological evaluations prepared after April 17, 2011. Plaintiffs

13

contend they seek the records "to show post-incident patterns of conduct by the Defendant City relevant to both their [sic] knowledge, indifference, and whether the supervisors concealed his condition." Pl's Appeal [DE-147] p. 9.

The court cannot agree. Plaintiffs themselves have submitted evidence showing that one of Defendant Koehler's supervisors knew of his mental condition shortly after the incident giving rise to this action. *See* Pl.'s Appeal, Ex. J, (Dep. of Phyllis Jernigan) pp. 142-43 (testifying that Koehler told her about his mental condition on April 28, 2011). Accordingly, Plaintiffs do not need any psychological evaluations of Defendant Koehler prepared after April 17, 2011 in order to gather evidence regarding his supervisors' actions in light of this knowledge. The magistrate judge's ruling as to these records, consequently, was neither clearly erroneous nor contrary to law.

### III. MOTION TO SEAL

Plaintiffs also filed an Amended Motion to Seal Exhibit C-3 [DE-148] to their Objection and Appeal. Plaintiffs filed the entirety of their motion and memorandum of law in support of the motion under seal. This is not in compliance with either the Stipulated Protective Order [DE-75] or practice in this court.

The Stipulated Protective Order [DE-75] specifically adopts the procedure set forth in Section T(1)(a)(6) of this court's Electronic Case Filing Administrative Polices and Procedures Manual ("Policy Manual"). That section provides that if "a filing party seeks to file materials that have been designated confidential by another party or individual, the filing party shall provisionally file the materials under seal in accordance with Local Civil Rule 79.2 . . . with notice served on the party or individual who desires to maintain the materials under seal." *Id.* The party or individual who then desires that such materials be maintained under seal then must file a motion to seal and supporting memorandum, in accordance with Section T(1)(a)1 of the

14

Policy Manual. Any memorandum in support of a motion to seal must specify certain things, including how the request to seal overcomes the common law or the First Amendment right of access to court documents. *See* Policy Manual § T(1)(a)1. Additionally, a motion to seal is public document, and ordinarily should not be filed under seal itself. *See* Policy Manual § T(1)(a)3.

It is unclear to the court whether the Amended Motion to Seal was meant to serve as notice to Defendants of the filing of material that had been designated confidential. If it was not, the memorandum in support of the Amended Motion to Seal does not comply with Section T(1)(a)1. The Amended Motion to Seal is DENIED without prejudice. Nevertheless, the court will allow any of the Plaintiffs or Defendants another opportunity, if they so choose, to file a motion to seal which complies with Section T(1)(a)1 of the Policy Manual. Any such motion must be filed within fourteen days of the filing date of this order.

## IV. CONCLUSION

For the foregoing reasons, the Amended Motion to Seal [DE-148] is DENIED without prejudice. Any of the Plaintiffs or Defendants may, if they so choose, file a motion to seal Exhibit C-3 to Plaintiffs' Objection and Appeal within fourteen days of the filing date of this order. Any such motion must comply with Section T(1)(a)1 of the Policy Manual.

The May 29, 2013, Order [DE-144] is AFFIRMED in part and REVERSED in part. All discovery to be supplemented or produced as required by this Order must be produced on or before October 15, 2013.

SO ORDERED.     This the 5th day of August, 2013.

James C. Fox
Senior United States District Judge

15